# UNITED STATE DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| _____ | : | CIVIL ACTION NO: |
| MICHAEL BEAUDETTE, | : | 3:03 CV 0899 (RNC) |
|           Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| POWER SERVICES COMPANY | : | |
|           Defendant | : | |
| _____ | : | February 12, 2004 |

## SECOND AMENDED COMPLAINT

JURISDICTION AND PARTIES

1.     This suit is brought pursuant to the Americans With Disabilities Act, ("ADA"), 42 U.S.C. §12101, et seq., the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a) et seq.

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343, as well as 28 U.S.C. §1332.  With respect to the state law claims, this Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367, in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue in this district is appropriate pursuant to 28 U.S.C. Sec 1391(b) because this is the district in which the cause of action arose.

4.     The plaintiff, Michael A. Beaudette, is a citizen of the United States, actually residing in Charlton, Massachusetts.  At all relevant times the plaintiff has been a qualified individual with a disability, and/or has been regarded as a person with a

- 2 -

disability, as that term is defined by the ADA, 42 U.S.C. §12102(2).  At all relevant times the plaintiff has been a person with a mental disorder within the meaning of the CFEPA, Conn. Gen. Stat. §46a-51(20).

5.    The defendant, Power Services Company, formerly known as PG&E National Energy Group Company ("PG&E NEG"), is a California general partnership with a principal office and place of business located in Bethesda, Maryland.  The defendant has more than 500 employees, and at all relevant times the defendant has been an employer within the meaning of the ADA, 42 U.S.C. §12111(5), and the CFEPA, Conn. Gen. Stat. §46a-51(10).

6.    The plaintiff has satisfied, in law or equity, all of the administrative prerequisites for bringing this action.

FACTS

7.    The plaintiff was employed by the defendant at its Lake Road Generating Plant ("LRG") in Dayville, Connecticut, from on or about July 31, 2000 until February 13, 2002, as an Operations & Maintenance Technician.

8.    Prior to being hired by the defendant, the plaintiff did not have any experience working in a power plant. The plaintiff's lack of experience was made known and discussed during the interview process.  The plaintiff was told by representatives of the defendant that he was offered the position because of his intelligence, initiative, enthusiasm and strong work ethic.

9.    The plaintiff has had a 20 year history of anxiety disorder, including panic attacks and agoraphobia, as well as depression.  He has received treatment for these conditions.  As of the time his employment with the defendant commenced, the

- 3 -

plaintiff's symptoms from this condition were well-controlled with medication.

10.     Prior to beginning his employment, the plaintiff was required to submit to a physical examination.  During that examination, the plaintiff disclosed that he was taking prescription medications for anxiety.

11.     During the period of July 2000 through about January 2001, the plaintiff was primarily involved in classroom training for approximately eight hours per day, five days per week.  The plaintiff had difficulty coping with the pace and depth of the training.  He had trouble concentrating on the material and was experiencing anxiety and stress.

12.     During the fall of 2000, the plaintiff discussed his concerns with the defendant's Operations Manager, Tim Bofman, who suggested that he contact PG&E's Employee Assistance Program ("EAP").

13.     The plaintiff accepted Bofman's advice, but his attempts to contact the defendant's EAP were unsuccessful.  However, he was able to obtain a referral through a counselor from his prior employer's EAP.

14.     In about December 2000, the plaintiff began treatment with Jonathan Rothman, M.D., a psychiatrist who determined that the plaintiff suffered from Attention Deficit/Hyperactivity Disorder ("ADHD").  Dr. Rothman initially prescribed Ritalin, which the plaintiff began taking in about January 2001, but over the next few weeks several other medications were tried.  The plaintiff was uncomfortable with some of these

- 4 -

medications because he was concerned about the side effects, including a possible increase in anxiety.

15.     Shortly after he was prescribed Ritalin, the plaintiff advised Bofman of that fact and disclosed that his physician had indicated that the plaintiff had ADHD and that he believed it was probably related to the stress at work.  The plaintiff also shared with Bofman his concerns about the side effects of the medications, specifically that he was worried about how they might effect his personality and behavior.  Bofman requested that the plaintiff show him the prescription bottles so that he could research them to determine if any work restrictions should be imposed for safety reasons.  The plaintiff complied with this request, and provided Bofman with prescription bottles of each of the various medications that were prescribed by Dr. Rothman.

16.     Throughout his employment with the defendant, the plaintiff performed his duties and responsibilities with dedication and commitment.  Although his disabilities did create barriers and on occasion interfered with his ability to perform his job functions, he worked hard to overcome those limitations.

17.     On or about November 30, 2001, the plaintiff received an annual performance review in which he received an overall rating of "competent."  The Summary Comments section of the review stated, *inter alia*, that the plaintiff "is a steady, hard worker.  What [he] lacks in experience in the field he makes up for in motivation to learn and strong desire to succeed."

18.     Between December 2001 and February 2002 the plaintiff and other employees at the defendant's LRG facility were extremely busy, routinely working up to 72 hours per week.  This situation exacerbated the plaintiff's medical condition by

- 5 -

causing significant anxiety and emotional distress, and physical symptoms including headaches, chest pain, inability to sleep and weight gain.

19.    On or about February 5, 2002, the plaintiff advised Bofman that he was having trouble handling the stress, and that he was concerned that he could lose his ability to control his temper and that he was afraid he might "go off" on someone and get into an argument or walk off the job.  At the time of this discussion, Bofman was aware that the plaintiff suffered from a psychiatric condition that included symptoms of anxiety and emotional distress.  The plaintiff shared his concerns about his emotional condition with Bofman in order to initiate a discussion about whether any steps could be taken to accommodate the situation and avoid the possibility of the plaintiff engaging in any inappropriate conduct.  Bofman assured the plaintiff that he was doing a good job, that everyone was under a lot of stress, and that things would eventually calm down, and did not offer any suggestions for any accommodation.

20.    On February 6, 2002, the plaintiff received a call from Joe Reindl, Lead O&M Technician, asking the if he would be willing to work overtime.  The plaintiff was just finishing a 12 hour shift, and was already scheduled to work a 72 hour week, and was feeling overwhelmed from the stress and anxiety.  He therefore told Reindl that he did not want to work the overtime, but that he would stay if Reindl really needed him to.  Reindl pushed the plaintiff for a yes or no answer, and the plaintiff ultimately said no.  Later that evening, the plaintiff had a further conversation with Reindl in the control

- 6 -

room regarding the overtime issue during which the plaintiff lost his temper, and both he and Reindl began shouting at each other.

21.    On information and belief, at the time of this argument Reindl and other supervisory employees working in the LRG facility were aware that the plaintiff had a psychiatric disability and that he had been taking prescription medication for that medical condition.

22.    Bofman overheard the argument and made an attempt to diffuse the situation, instructing the plaintiff to go to his locker.  The plaintiff obeyed that command, but while walking away he threw his hard hat against the wall.  Bofman then informed the plaintiff that he was suspended, and that he should not return to company property until contacted by Bofman.

23.    On February 7, 2002, the plaintiff contacted the defendant's EAP and was referred to a counselor, whom he saw that day for an evaluation.  The counselor also determined that the plaintiff was suffering from Attention-Deficit/Hyperactivity Disorder.

24.    On February 10, the plaintiff contacted Bofman on his cell phone and informed him that he had been to see a counselor and inquired about his paycheck. Bofman indicated that he would be contacting the plaintiff soon to set up a meeting.

25.    On February 12, 2002, the plaintiff provided Bofman with a memo discussing the February 6 incident, providing further detailed information about his Attention Deficit Disorder and treatment, including the fact that he was seeing a mental health counselor referred through the defendant's EAP who had been very helpful, and that he intended to follow-through with further treatment.  The plaintiff further stated that he would make available any findings or recommendations from the further medical

- 7 -

evaluations that were planned.  The memo was sent to Bofman by facsimile machine.

26.    Later that day, February 12, the plaintiff met with the General Manager of the LRG facility, Jim Carlton, a Regional Human Resources Director, Karen Kinder, and Bofman, and was asked to give a statement concerning the February 6 incident.

27.    On February 13, 2002, the plaintiff met with the same individuals, and was informed by Carlton that his employment with the defendant was being terminated, effective immediately.

28.    At the February 13 meeting the plaintiff was handed a letter, signed by Carlton, notifying him of the reasons for his termination.  The letter stated that the plaintiff's termination was "based on a cumulation of incidents since your date of hire in which there have been moderate to severe performance problems," and listed three incidents from 2001 and the February 6, 2002 event described above.

29.    The three incidents listed in the termination letter from 2001 all occurred prior to the positive annual performance review the plaintiff received on or about November 30, 2001.

30.    The reasons stated in the February 13 termination letter, and other explanations later provided by the defendant, were untrue, inconsistent, and pretextual.

31.    The February 6, 2002 incident was directly related to the plaintiff's psychiatric disability.

32.    At all material times, the plaintiff suffered from a psychiatric illness which substantially impaired one or more major life activities, and the defendant regarding the plaintiff as having such a disability.

33.    The defendant's decision to terminate the plaintiff's employment was

- 8 -

substantially motivated by the plaintiff's disabilities or perceived disabilities.

COUNT ONE (ADA)

34.    The plaintiff hereby restates, re-alleges and incorporates by reference paragraphs 1-33 above.

35.    By the conduct described above, the defendant has discriminated against the plaintiff because of his disability in violation of the ADA, 42 U.S.C. § 12112(a).

36.    The defendant's conduct as described above was undertaken with malice or reckless indifference to the federally protected rights of the plaintiff.

37.    As a result of the foregoing, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of his career and consequent loss of employment opportunities, pain and suffering, anxiety, humiliation and shame and other emotional distress.

COUNT TWO (CFEPA)

38.    The plaintiff hereby restates, re-alleges and incorporates by reference paragraphs 1-37 above.

39.    By the above-described conduct, the defendant has discriminated against the plaintiff in violation of Conn. Gen. Stat. §46a-60(a)(1).

40.    As a result of the defendants' unlawful conduct, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of

- 9 -

his career and consequent loss of employment opportunities, pain and suffering,

anxiety, humiliation and shame and other emotional distress.

- 10 -

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff demands that this Court:

1.    Order defendants, their agents, successors and assigns to cease and

desist from discriminating against the plaintiff;

2.    Order that the plaintiff be reinstated to his former position, or to its

substantial equivalent, and that he be made whole for all lost wages and

benefits;

3.    Award plaintiff compensatory damages;

4.    Award plaintiff punitive damages;

5.    Award plaintiff prejudgment interest;

6.    Award plaintiff reasonable attorneys fees and costs for bringing this

action; and

7.    Award plaintiff such other legal or equitable relief as the Court deems

appropriate.

- 11 -

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims to which he is entitled as a matter of law.

Respectfully submitted,
THE PLAINTIFF,


By: _____
Gregg D. Adler  ct05698
Mary E. Kelly ct07419
Livingston, Adler, Pulda, Meiklejohn
  & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Second Amended Complaint has been mailed, first-class, postage prepaid, on this 12th day of February, 2004 to the following:


Claudia T. Centomini
James W. Bucking
Foley, Hoag, LLP
155 Seaport Boulevard
Boston, MA 02210-2600


_____
Gregg D. Adler