(The ADA protects employees who are "qualified to do the job for which they were hired; and threatening other employees disqualifies one"); EEOC v. Amego, Inc., 110 F.3d 135, 144 (1st Cir. 1997) (Plaintiff bears the burden of proving that "he or she can perform the essential functions of the job... [w]here those essential job functions necessarily implicate the safety of others").[10] See also La Penta v. Commission On Human Rights and Opportunities, No. CV930524017, 1994 WL 591774, at *2, (Conn. Super. Oct. 19, 1994) (Plaintiff's "acts of misconduct show that he is not capable of performing his job," and is "a valid reason for terminating his employment whether or not his disability was a factor").

Plaintiff committed an act of workplace violence. He threw his hard hat with force across the Control Room, which was filled with people. He did so in anger, after cursing at his supervisor. Even if Plaintiff did not aim his hard hat at anyone in particular and even if he did not intend to hit anyone, the potential of seriously injuring someone in the room existed. Moreover, several of his co-workers approached management after the hard hat incident and stated that Plaintiff had initiated similar arguments on prior occasions. These facts present the firmest of foundations for a rational non-discriminatory reason to disqualify an employee for future employment. Plaintiff cannot be qualified for his job when his "unacceptable behavior threatens the safety of others ... even if the behavior stems from a mental disability." Calef v. Gillette Co., 322 F.3d 75, 87 (1st Cir. 2003).

<u>Plaintiff Cannot Show That PSC's Stated Reason Is A Pretext</u>

Even if Plaintiff could establish a prima face case, his complaint would still fail because PSC has articulated a non-discriminatory reason for firing Plaintiff and Plaintiff cannot show that

---

[10] Despite the differences between the ADA and CFEPA, Connecticut courts look to federal precedent for guidance in enforcing Connecticut's anti-discrimination statutes. Levy v. Commission On Human Rights and Opportunities, 671 A.2d 349, 355 (Conn. 1996); Miko v. Commission On Human Rights and Opportunities, 596 A.2d 396, 403 (Conn. 1991).

FHBoston/1079632.1                    - 16 -

the reason is a pretext for discrimination. PSC did not consider Plaintiff's alleged disabilities when it made the decision to fire him. PSC viewed Plaintiff's throwing of his hard hat in the Control Room of the power plant to be an act of violence, which it found unacceptable and beyond the bounds of proper workplace conduct. Plaintiff's conduct on the night of February 6, 2002 was exacerbated by prior incidents of anger-related confrontations with co-workers which were brought management's attention by other employees while Plaintiff was administratively suspended. This is a legitimate, non-discriminatory reason for discharge whether the employee is disabled or not, and whether the disability contributed to the employee's behavior. See Misek-Falkoff, 854 F. Supp. at 227.

Plaintiff effectively asks this Court for a dispensation for the consequences of throwing his hard hat on the theory that it might have been caused by his disability.[11] However, although federal and state law protects employees from discrimination on account of their disabilities, it does not protect them from termination on account of disability-related misconduct. This distinction between disabilities and disability related misconduct "has been repeatedly applied by Courts throughout [the Second Circuit] and elsewhere." Valentine v. Standard & Poor's, 50 F.Supp.2d 262, 289 (S.D.N.Y. 1999), aff'd, 205 F.3d 1327 (2d Cir. 2000); see Reed v. LePage Bakeries, Inc., No. 98-450-P-H, 2000 U.S. Dist. LEXIS 2454, at *25-*28 (D.Me. Feb. 29, 2000), adopted by 102 F.Supp.2d 33 (D.Me. 2000), aff'd, 244 F.3d 254 (1st Cir. 2001); Carrozza v. Howard County, Md., 847 F.Supp. 365, 367-68 (D. Md. 1994), aff'd, 45 F.3d 425 (4th Cir. 1995). The Court in Valentine further noted that it was irrelevant whether plaintiff employee's misconduct stemmed from his disability because "the ADA does not immunize disabled

---

[11] Plaintiff's medical expert, Dr. Selig testified that generalized anxiety disorder and panic disorder do not necessarily lead to physically aggressive behavior. Selig Dep. Tr. at 9-11. Plaintiff himself is unsure about this. Pl. Dep. Tr. at 214-15. PSC's medical expert, Dr. Zeman denies it. Zeman Dep. Tr. at 10-11, 68-70.

employees from discipline or discharge for incidents of misconduct in the workplace." Id. at 289. Similarly, in Francis v. Runyon, 928 F.Supp. 195, 205 (E.D.N.Y. 1996) (citation omitted), the Court determined that a disabled employee cannot be "otherwise qualified" for a position if he commits misconduct which would disqualify a non-disabled individual from performing the job. See also Raytheon Co. v. Hernandez, 540 U.S. 44, 124 S. Ct. 513, 520 n.6 (2003) (affirming the principle that employers can make a distinction between disabilities and disability-related misconduct).

Plaintiff, however, will argue that PSC did not discharge him because he threw his hard hat across the Control Room, but rather acted upon complaints from other employees about his conduct. Plaintiff will further allege that these employees believed that his conduct was related to his medical condition. But this argument, too, is unavailing. Indeed, the co-worker complaints, having brought to PSC's attention other acts of anger-related misconduct, enhanced rather than diminished the lawful, non-discriminatory basis for Plaintiff's discharge.

Just as courts allow employers to distinguish between disabilities and disability-related misconduct, they have also allowed employers to discharge employees because of co-worker complaints about disability-related misconduct. In Bradford v. City of Chicago, 308 F.Supp.2d 895 (N.D.Ill. 2004), the City had discharged the plaintiff, who suffered from bipolar disorder, after receiving complaints from co-workers about his erratic and threatening behavior. The Court held that the employer did not violate the ADA by terminating the employee's employment based on these co-worker complaints. Id. at 899.

The Court in Misek-Falkoff reached a similar conclusion with respect to an employee who suffered from a neurological disorder and was fired, in part, because of co-worker complaints about her threatening behavior. 854 F.Supp. at 221. Although it was unclear

whether the plaintiff's misconduct directly related to her disability, the court indicated that this was not a relevant consideration since, "handicapped or not," it is a job-related requirement that an employee be able to get along with co-workers. Id. at 227. In sum, the law does not prevent an employer from considering complaints about an employee's misconduct simply because they may be related to a disability. See also Husowitz v. Runyon, 942 F. Supp. 822, 834 (E.D.N.Y. 1996) (employer may legitimately consider whether an employee's disability prevents him from getting along with co-workers).

The evidence, therefore, is that PSC had legitimate, non-discriminatory reasons to terminate Plaintiff's employment, and there is no evidence that PSC's reasons were a pretext. Consequently, there is no material factual dispute creating a triable issue on Plaintiff's state law claim, and judgment for PSC should enter as a matter of law.

**II.    Plaintiff's ADA Claim Also Must Be Dismissed As A Matter Of Law.**

To establish a claim under the ADA, Plaintiff must demonstrate that: (i) he was disabled within the meaning of the statute, (ii) he was qualified to perform his job with or without reasonable accommodation, and (iii) he suffered an adverse employment action because of his disability. Heyman v. Queens Village Comm. For Mental Health, 198 F. 3d 68, 72 (2d. Cir. 1999). Plaintiff must demonstrate each and every one of these elements to establish a *prima facie* case of disability discrimination under the ADA. Sedor v. Frank, 42 F.3d 741, 746 (2d Cir. 1994); Motta v. Meachum, 969 F.Supp. 99, 111 (D. Conn. 1997).

PSC has already demonstrated, in connection with Plaintiff's disability discrimination claim under CFEPA, that Plaintiff is not qualified to perform the essential functions of his job with or without a reasonable accommodation and that PSC terminated Plaintiff's employment for legitimate, non-discriminatory reasons. Plaintiff's ADA claims fail for the same two reasons. In

addition, for the reasons stated below, Plaintiff is not disabled within the meaning of the ADA, providing a third ground for summary judgment.

### Plaintiff Is Not Substantially Limited In A Major Life Activity

Plaintiff cannot establish that he is disabled under federal law because he was not and is not substantially limited in a major life activity. To be disabled under the ADA, an individual "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002). The Supreme Court has also held that if the individual takes measures "to correct for, or mitigate a ... mental impairment, the effects of those measures ... must be taken into account when judging whether that person is 'substantially limited' in a major life activity." Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999)

Plaintiff has alleged that he suffers from panic attacks and agoraphobia and has trouble concentrating in a classroom. However, Plaintiff seldom experiences panic attacks. He may have had problems twenty years ago with panic attacks and agoraphobia, but since he has taken medication for the last twenty years, he has rarely experienced such attacks. Plaintiff testified that he had trouble in high school paying attention in class. He also disliked the classroom portion of his job at PSC. Nevertheless, Plaintiff learned the material and was certified to perform the job at the same time as everyone else. Indeed, Plaintiff testified at his deposition that he knew more about the duties of his position than other employees who were in the same job, and that he did not need an accommodation to perform his job. Thus, by Plaintiff's own account, he is not today and was not at the time of discharge substantially limited in a major life activity.

Plaintiff also alleges that he has ADD, but several circuits have held that ADD is not a disability within the meaning of the ADA as the plaintiffs have failed to prove that they were substantially limited in a major life activity. Calef v. Gillette Co., 322 F.3d 75, 86 (1st Cir. 2003); Wright v. CompUSA, Inc., 352 F.3d 472, 476 (1st Cir. 2003); Doebele v. Sprint/United Management Co., 342 F.3d 1117 (10th Cir. 2003); Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499 (7th Cir. 1998); see also Spychalsky v. Sullivan, CV01-0958(DRH)(ETB), 2003 U.S. Dist. LEXIS 15704 (E.D.N.Y. Aug. 29, 2003), aff'd, No. 03-9036, 2004 U.S. App. LEXIS 10246 (2d Cir. May 25, 2004).

Nor does Plaintiff's alleged anxiety disorder, which he claims caused him to feel stress and made it more difficult to understand and perform his job, establish a disability under the ADA.[12] As the First Circuit noted in Calef, "[v]ery few people find handling stress to be easy. Many people do not think well in stressful situations and find it harder to speak well." Calef, 322 F.3d at 86 (holding that the plaintiff's problems with responding in stressful situations because of his ADHD did not make him substantially limited in a major life activity). Plaintiff also alleges that his long hours contributed to his stress. The testimonial evidence, however, reflects that all of the employees at PSC's Lake Road facility were feeling stressed by the long hours, and the record evidence does not show that Plaintiff "could not perform some usual activity compared with the general population, or that he had a continuing inability to handle stress at all times, rather than only episodically." Id. Thus, whatever stress Plaintiff had did not render him disabled under the ADA.

---

[12] See Plaintiff's Second Amended Complaint, ¶¶ 9, 11, 15, 16 and 18.

Plaintiff Was Not Regarded As Disabled Within The Meaning Of The ADA.

Plaintiff also alleges that even if he was not disabled under the ADA, he gains protection under the statute because PSC "regarded" him as disabled. For Plaintiff to prove that he was regarded as disabled, he must show that PSC (i) mistakenly believed that a person has a physical impairment that substantially limited one or more major life activities, or (ii) mistakenly believed that an actual, non-limiting impairment substantially limited one or more major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999).

The undisputed facts demonstrate that PSC did not regard Plaintiff as disabled. Rather, PSC believed that Plaintiff was fit for employment. It had received such assurances from its medical vendor. PSC sent Plaintiff to its medical vendor for two "fitness for duty" tests. On both occasions, the vendor told PSC that Plaintiff could perform his job with no restrictions. There is no evidence in the record to show that PSC believed that Plaintiff was substantially limited in any major life activity. Plaintiff cannot demonstrate that PSC made any kind of comment or took any action that would have suggested that PSC believed he was disabled. On the contrary, when Plaintiff told Bofman that thought he had ADHD, Bofman told him that Plaintiff did not necessarily have ADHD as his son had been misdiagnosed.

## CONCLUSION

For all the foregoing reasons, PSC requests that the Court enter summary judgment in its favor on each of Plaintiff's claims.

Respectfully submitted,

**POWER SERVICES COMPANY**

By its attorneys,

*/s/ Claudia T. Centomini*
James W. Bucking (ct 24940)
Claudia T. Centomini (ct 24941)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

Date:  August 10, 2004

## CERTIFICATE OF SERVICE

I, Claudia T. Centomini, certify that on August 10, 2004, I served the foregoing document on plaintiff by causing a copy of the same to be delivered by first class mail, to Gregg D. Adler, Esq., Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 557 Prospect Avenue, Hartford, CT 06105-2022 and Daniel Krisch, Esq., Horton, Shields & Knox, P.C., 90 Gillett Street, Hartford, CT 06105.

*/s/ Claudia T. Centomini*
Claudia T. Centomini