UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Michael Beaudette,

                Plaintiff,

       v.

Power Services Company,

                Defendant.

CIVIL ACTION NO.
303CV899 (RNC)

**AFFIDAVIT OF CLAUDIA T. CENTOMINI IN SUPPORT**
**OF DEFENDANT'S MOTION TO STRIKE**

I, Claudia T. Centomini, do hereby depose and say:

1.      I am co-counsel of record of Defendant Power Services Company ("PSC") in the above-captioned matter.  I submit this affidavit in support of Defendant's Motion to Strike.

2.      Attached hereto at Exhibit A is a true and correct copy of selected excerpts from the deposition of Joseph Reindl, taken on April 27, 2004.

3.      Attached hereto at Exhibit B is a true and correct copy of selected excerpts from the deposition of Michael Beaudette, taken on November 2, 2003 and May 14, 2004.

Signed under the penalties of perjury this 4th day of October, 2004.

Claudia T. Centomini

FHBOSTON/1114302.1

A

1                 UNITED STATES DISTRICT COURT
2                    DISTRICT OF CONNECTICUT

3

4    MICHAEL BEAUDETTE,           )   No.: 9:03 CV 0899 (RNC)
                    Plaintiff    )
5    v.                           )
                                  )
     PG&E NATIONAL ENERGY GROUP,  )
6    INC.,                        )
                    Defendant     )
7

8

9

10              DEPOSITION OF:   JOSEPH H. REINDL, taken

11    before ROXANNE C. COSTIGAN, Notary Public Stenographer,

12    pursuant to Rule 30 of the Federal Rules of Civil

13    Procedure, at the law offices of FOLEY HOAG, LLP, 155

14    Seaport Boulevard, Boston, Massachusetts, on April 27,

15    2004, commencing at 10:05 a.m.

16

17

18

19    APPEARANCES:
      (See Page 2)
20

21

22

23

24                     Roxanne C. Costigan
                    Registered Merit Reporter

            Accurate Court Reporting * 1500 Main Street
                     Springfield, MA   01115
                        413-747-1806

```
 1                        I N D E X
 2    WITNESS               DIRECT   CROSS   REDIRECT   RECROSS
 3    Joseph H. Reindl         4       60       91
 4
 5    EXHIBITS                                              PAGE
 6    Exhibit 1, To Whom It May Concern letter ........ 20
 7    Exhibit 2, To my Friends at Lake Road letter ..... 23
 8    Exhibit 3, typed document ....................... 48
 9    Exhibit A, letter dated February 13, 2002 ....... 84
10
11
12
13                           -*-
14
15
16
17
18
19
20
21
22
23
24
```

Accurate Court Reporting * 1500 Main Street
Springfield, MA   01115
413-747-1806

1          MR. ADLER:  It's not necessarily a
2    yes or no question.
3          THE WITNESS:  You're talking -- are
4    we still on the morning of September 11 or --
5          Q.    (By Ms. Centomini)  No.  We moved on.  At
6    any other occasion did you talk to Mr. Bofman about Mr.
7    Beaudette having a medical condition?
8          A.    I didn't feel the need to because it was
9    common knowledge, so I thought, and I felt that it was
10   disrespectful to bring that up to my supervisor.
11         Q.    So, you did not --
12         A.    It was out of respect kind of.  I have
13   since learned that that probably isn't the best thing
14   to do for anybody, but at that time, I thought I was
15   doing the right thing.
16         Q.    So, you didn't talk to Mr. Bofman about
17   Mr. Beaudette's having a medical condition?
18         A.    I never specifically said medical
19   condition, no.
20         Q.    What about anyone else in management at
21   Lake Road, did you talk to anyone else in management
22   about Mr. Beaudette having a medical condition?
23         A.    No.
24         Q.    Did you discuss it with -- did you discuss

1    into it, so his knowledge probably was ahead of what

2    Will Cole's was at that time.

3                    MR. ADLER:  I have no further

4          questions.  Thank you.

5                    MS. CENTOMINI:  I'm going to have a

6          few.

7

8    REDIRECT EXAMINATION BY MS. CENTOMINI:

9          Q.      Mr. Reindl, regarding the conversation you

10   had with Mr. Bofman in February, 2002, just to clarify,

11   you did not discuss anything concerning Mr. Beaudette's

12   medical condition, is that right?

13         A.      I didn't specifically address it in those

14   words.

15         Q.      But Mr. Beaudette's medical condition was

16   not raised during that conversation, is that right?

17         A.      It was not in those terms.

18         Q.      Was there anything regarding Mr.

19   Beaudette's medical condition that was raised during

20   that conversation?

21         A.      The basis of our conversation was the

22   medical condition.

23         Q.      That's not my question.  My question was:

24   Did you actually discuss it?

1              MR. ADLER:  Well, actually --

2         Q.      (By Ms. Centomini)  Did you actually

3    discuss his medical condition; did you verbally discuss

4    the medical condition?

5         A.      In the aspect of him coming back, I wanted

6    him to address the problem because I felt nothing was

7    being done about it.

8         Q.      What was the problem?

9         A.      In that aspect, it was mentioned.

10        Q.      What was the problem?

11        A.      At that time, it became clear to me that

12   he wasn't taking his medication.

13        Q.      But you never discussed with Mr. Bofman

14   his taking his medication, is that right?

15        A.      I did not want to discuss it --

16        Q.      I didn't --

17        A.      -- in specific terms because I felt like

18   that was not part of my job function, but I had a

19   concern of him coming back on my shift.

20        Q.      But your answer is no, isn't that right,

21   no, you did not raise it, you did not raise any

22   discussion about his medication, is that right?

23        A.      No.

24        Q.      Did you not tell me when I previously

1    questioned you that you never discussed with Mr. Bofman

2    specifically any type of medical condition concerning

3    Mr. Beaudette?

4                    MR. ADLER:  I'm going to object.

5        Q.    (By Ms. Centomini)  I'm going to -- let me

6    rephrase it.

7                    When you testified earlier, did you not

8    tell me that you did not discuss with Mr. Bofman

9    anything regarding Mr. Beaudette's medical condition?

10                    MR. ADLER:  I'm going to object.  I

11        don't think that was his testimony.

12                    MS. CENTOMINI:  I think --

13        actually --

14        Q.    (By Ms. Centomini)  Well, go ahead.

15                    MR. ADLER:  I don't want to argue

16        about it.

17                    MS. CENTOMINI:  Why don't you go

18        ahead and answer?

19                    THE WITNESS:  Once again, I didn't

20        feel the need to specifically say that Mike has

21        ADD and I want you to do this, this, this and

22        this.

23        Q.    (By Ms. Centomini)  Okay.  And --

24                    MR. ADLER:  He's still talking.

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF MASSACHUSETTS

3        I, ROXANNE C. COSTIGAN, a Notary Public in and for

4    the Commonwealth of Massachusetts, do certify that

5    pursuant to notice, there came before me on the 27th

6    day of April, 2004, at the law offices of FOLEY HOAG,

7    155 Seaport Boulevard, Boston, Massachusetts, the

8    following named person, to wit:  JOSEPH REINDL, who was

9    by me duly sworn to testify to the truth and nothing

10   but the truth as to his knowledge touching and

11   concerning the matters in controversy in this cause;

12   that he was thereupon examined upon his oath and said

13   examination reduced to writing by me; and that the

14   deposition is a true record of the testimony given by

15   the witness, to the best of my knowledge and ability.

16       I further certify that I am not a relative or

17   employee of counsel or attorney for any of the parties,

18   or a relative or employee of such parties, nor am I

19   financially interested in the outcome of the action.

20       WITNESS MY HAND, this 17th day of May, 2004.

21

22                    ----------------------------
                          Roxanne C. Costigan
23   My Commission expires:  July 16, 2010

24



              Accurate Court Reporting * 1500 Main Street
                         Springfield, MA   01115
                            413-747-1806

B

1                    UNITED STATES DISTRICT COURT
2                        DISTRICT OF CONNECTICUT

3

4    MICHAEL BEAUDETTE,          )   No.: 9:03 CV 0899 (RNC)
                    Plaintiff    )
5    v.                          )
                                 )
6    PG&E NATIONAL ENERGY GROUP, )
     INC.,                       )
7                    Defendant   )

8

9

10              DEPOSITION OF:  MICHAEL BEAUDETTE, taken

11   before ROXANNE C. COSTIGAN, Notary Public Stenographer,

12   pursuant to Rule 30 of the Federal Rules of Civil

13   Procedure, at the law offices of FOLEY HOAG, LLP, 155

14   Seaport Boulevard, Boston, Massachusetts, on November

15   3, 2003.

16

17

18

19   APPEARANCES:
     (See Page 2)
20

21

22

23

24                      Roxanne C. Costigan
                      Registered Merit Reporter


              Accurate Court Reporting * 1500 Main Street
                       Springfield, MA   01115
                          413-747-1806

1                         I N D E X

2   WITNESS                 DIRECT   CROSS   REDIRECT   RECROSS

3   Michael Beaudette          4

4

5

6   EXHIBITS                                            PAGE

7   Exhibit 1, Confidentiality Order ...............   4

8   Exhibit 2, letter dated February 13, 2002 .......  22

9   Exhibit 3, Medical Exam Notification ...........   84

10  Exhibit 4, memo dated February 15, 2001 .........  123

11  Exhibit 5, letter dated September 24, 2001 ......  135

12

13

14                           -*-

15

16

17

18

19

20

21

22

23

24

1    February 6, 2002?

2        A.    I'd say no.

3        Q.    You didn't display violence on February 6?

4        A.    I threw my hat helmet if that's -- if you

5    consider that violent, then that's up to -- I did throw

6    my hat helmet.  I admit that I threw my hat helmet, and

7    I was angry at the time.

8        Q.    Did you engage in a shouting match?

9        A.    I was engaged in a -- you could call it a

10   shouting match, sure.

11       Q.    Who were you shouting at?

12       A.    Joe Reindl.  I was arguing with Joe Reindl

13   who was shouting at me, initiated it.

14       Q.    So, what occurred on February 5, 2002,

15   that you believe affects the incident on February 6?

16       A.    I sought an accommodation from Tim Bofman

17   who, as in the past, ignored my pleas and didn't do

18   anything about it.  When I pre-warned him that I felt

19   like there was a possibility that I was going to go off

20   in an argument or I was going to walk off the job

21   because I just was so stressed, mentally stressed,

22   hadn't been sleeping, I was totally consumed with the

23   job.  I was -- I couldn't slow down.  I couldn't relax.

24       Q.    What was the accommodation you sought?

1          A.      A break.

2          Q.      What do you mean by a break?

3          A.      A break, some -- same thing, time, some

4     time off.

5          Q.      So, you were seeking time off?

6          A.      Some time -- I was seeking time.

7          Q.      I'm not sure what you mean.

8          A.      Not necessarily time off away from the

9     job, put out of the fray and kind of regroup and --

10    he'd like to speak with you.

11                 MS. CENTOMINI:  Excuse me for a

12          minute.

13                 MR. ADLER:  That's all right.  You

14          don't have to --

15                 MS. CENTOMINI:  I think we're off the

16          record, right.

17                 MR. ADLER:  Yes, we are.

18                      (Off record conference from

19                      11:05 to 11:06)

20                 MS. CENTOMINI:  Back on the record.

21          Q.      (By Ms. Centomini)  During your

22    conversation with Tim Bofman on February 5, 2002, what

23    did you specifically ask for from him?

24          A.      I just said, like, I need a break.  I

1       Q.    But when you told Tim Bofman you needed a

2    break, you weren't specific in terms of what you

3    needed, is that correct?

4       A.    No.  That is correct, yes.

5       Q.    Was there any time in which you asked Tim

6    Bofman for time off?

7       A.    Over a period of three years, yes, I mean,

8    not three years, nineteen months, yes.

9       Q.    Was there any time in which you asked for

10    time off because you needed an accommodation for your

11    disability?

12       A.    Yes.

13       Q.    When was that?

14       A.    Which time?

15       Q.    All the times that you asked.

16       A.    I had to go see this Dr. Rothman on a

17    regular basis and I had to leave work because of it

18    early.  So, I needed to leave work to fit that into my

19    schedule because we were working pretty much

20    seventy-two hours a week.

21       Q.    Who is Dr. Rothman?

22       A.    He was the doctor that diagnosed me with

23    ADD.

24       Q.    When did he diagnose you with ADD?

1          A.      I think it was in November, 2001.

2          Q.      What did Tim Bofman say when you asked

3   for time off to see Dr. Rothman?

4          A.      Well, Tim Bofman was very much aware of

5   the diagnosis and the medication and he was very -- he

6   made it so I could go to make my appointments for the

7   most part.

8          Q.      So, he accommodated your appointments, is

9   that correct?

10         A.      My appointments, yes, for the most part.

11         Q.      Going back to Exhibit 2, have you told me

12  all the ways in which this letter represents a pretense

13  for your discharge?

14         A.      Well, there was suspicions on my part that

15  -- and I did confront Tim Bofman when this whole

16  February 13 lockout/tagout was just -- was just trying

17  to get some dirt on me to later show.  I confronted him

18  with that.

19         Q.      You confronted Tim Bofman?

20         A.      Yes.

21         Q.      When did you confront him?

22         A.      After the meeting on -- I'm going to use

23  this date as being correct -- on February 13.

24         Q.      Of 2002?

150

1   UNITED STATES DISTRICT COURT

2   DISTRICT OF MASSACHUSETTS

3       I, ROXANNE C. COSTIGAN, a Notary Public in and for

4   the Commonwealth of Massachusetts, do certify that

5   pursuant to notice, there came before me on the 3rd day

6   of November, 2003, at the law offices of FOLEY HOAG,

7   155 Seaport Boulevard, Boston, Massachusetts, the

8   following named person, to wit:  MICHAEL BEAUDETTE, who

9   was by me duly sworn to testify to the truth and

10  nothing but the truth as to his knowledge touching and

11  concerning the matters in controversy in this cause;

12  that he was thereupon examined upon his oath and said

13  examination reduced to writing by me; and that the

14  deposition is a true record of the testimony given by

15  the witness, to the best of my knowledge and ability.

16      I further certify that I am not a relative or

17  employee of counsel or attorney for any of the parties,

18  or a relative or employee of such parties, nor am I

19  financially interested in the outcome of the action.

20      WITNESS MY HAND, this 11th day of November, 2003.

21

22                          Roxanne C. Costigan
    My Commission expires:  July 16, 2010

23

24


                Accurate Court Reporting * 1500 Main Street
                        Springfield, MA   01115
                            413-747-1806